THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 1:00-cr-00069-MR-5

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **O R D E R** |
| ) | |
| AMOS JUNIOR SCOTT, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Defendant's Motion for Compassionate Release [Doc. 207]; the Government's Response to Defendant's Motion for Compassionate Release [Doc. 213]; and the Government's Motion for Leave to File Response under Seal [Doc. 214].

**I. BACKGROUND**

In January 2001, the Defendant Amos Junior Scott was found guilty by a jury of one count of conspiracy to possess with intent to distribute at least five kilograms of powder cocaine, in violation of 21 U.S.C. §§ 841 and 846. [Doc. 80: Jury Verdict]. In light of the Defendant's prior convictions for controlled substance offenses, the Government filed a Notice pursuant to 21 U.S.C. § 851. [Doc. 7: Information]. The Defendant thus faced a minimum

of twenty years' imprisonment and a maximum of life.  See 21 U.S.C. §§ 841(b)(1)(A) and 851.

At sentencing, the Court found the Defendant to be responsible for at least five kilograms but less than 15 kilograms of powder cocaine. [Doc. 111: Judgment at 7, 9].  The Defendant was found to be a career offender, with a Guidelines range of 360 months to life. [Doc. 189: PSR at ¶ 52]. The Court sentenced him to a term of life imprisonment. [Doc. 111: Judgment at 2]. The Defendant is currently housed at FCI Butner Medium II with no projected release date due to his life sentence.[1]

The Defendant now moves the Court for a compassionate release. [Doc. 207].  The Court directed the Government to respond to the Defendant's motion.  [Text-Only Order dated Feb. 22, 2021].  The Government filed its Response on March 22, 2021.  [Doc. 213].  The Defendant thereafter filed a Reply.  [Doc. 217].

## II. DISCUSSION

### A. Motion for Compassionate Release

Section 3582(c)(1)(A), as amended by The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), permits a defendant

---

[1] See https://www.bop.gov/inmateloc/ (last visited July 22, 2021).

to seek a modification of his sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, the Government concedes that the Defendant has sufficiently exhausted his administrative remedies with BOP by requesting compassionate release from the Warden. [Doc. 213 at 3]. Accordingly, the Court will proceed to address the merits of the Defendant's compassionate release request.

As is relevant here, the Court may reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons if "such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable. Id.

Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. As is relevant here, the

application note to § 1B1.13 specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is:

> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). This policy statement, however, was adopted before the First Step Act, and the Sentencing Commission has not updated the policy statement to account for the fact that defendants are now permitted to file their own motions for compassionate release. In light of these circumstances, the Fourth Circuit Court of Appeals has held that § 1B1.13 is no longer an "applicable" policy statement that constrains the

4

discretion of the district courts in finding that "extraordinary and compelling reasons" exists to warrant a reduction in sentence.  See United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020) ("By its plain terms, . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)").  Thus, this Court is "empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise."  Id. at 284 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)).  Nevertheless, the Court recognized, that the policy statement "remains helpful guidance even when motions are filed by defendants."  Id. at 282 n.7.

Here, the Defendant argues that extraordinary and compelling reasons exist for a compassionate release on three grounds: (1) that he was erroneously classified as a career offender, and that if he were sentenced today, he would not have been sentenced as severely; (2) that he suffers from a number of chronic health conditions which increase his risk of serious illness or death from COVID-19; and (3) that he "has compiled a remarkable record of rehabilitation" in prison, thereby demonstrating that he would not be a danger to the public if released.  [Doc. 207 at 1-2].  The Court will address each of these grounds in turn.

5

The Defendant first argues that he was erroneously classified as a career offender. [Doc. 207 at 1]. He further contends that the penalty range for his offense of conviction was recently reduced by the First Step Act. [Id. at 1]. Ultimately, he argues that if he were sentenced today, his advisory guideline range would be 292-365 months, rather than 360-life. [See id. at 5].

The Fourth Circuit recognized in McCoy that a district court may find extraordinary and compelling reasons for a sentence reduction where the original sentence was based on laws that have been substantially revised in the intervening years, such that the prisoner is stuck serving far more time than he could possibly receive if he were to be resentenced today. See McCoy, 981 F.3d at 285 (affirming district court's grant of compassionate release where, due to the now-outdated "stacking" rule, prisoners convicted of multiple Section 924(c) offenses at the same time were serving sentences 30 years longer than they could possibly receive under current law). However, the Defendant does not present such a case here.

The Defendant was determined at the time of sentencing to be a career offender. As the Court recently explained in denying the Defendant's motion to vacate pursuant to 28 U.S.C. § 2255, that conclusion was correct then and

6

remains correct today. [See Civil Case No. 1:19-cv-00305-MR, Doc. 8 at 6-13]. Further, the Defendant was convicted of participating in a conspiracy to possess with the intent to distribute more than five kilograms of powder cocaine. That offense still carries a maximum penalty of life imprisonment. See 21 U.S.C. § 841(b)(1)(A)(ii). A career offender convicted of an offense with a statutory maximum of life imprisonment is classified at offense level 37[2] under the guidelines, with a criminal history category of VI. See U.S.S.G. § 4B1.1(b)(1).

The Defendant also argues that § 401 of the First Step Act provides him relief. While that section may have changed his mandatory minimum sentence, that minimum was not implicated in his sentencing. As such, this matter is entirely unlike McCoy where the defendant was sentenced to the "stacked" mandatory minimum, which minimum was then reduced by two thirds. That change was held to be "extraordinary and compelling". The Defendant herein, however, was sentenced based on his criminal history

---

[2] Admittedly, the drug quantity table in U.S.S.G. § 2D1.1(c) has changed, such that the 5-15 kilograms of cocaine for which the Defendant was found to be personally responsible would now produce a base offense level of 30, rather than the 36 cited in the Presentence Investigation Report. [See Doc. 189: PSR at ¶ 15]. The Defendant's adjusted offense level, without reference to the career offender provisions, would be 32, not 38. But because the Defendant is a career offender, the higher offense level of 37 applies. See U.S.S.G. § 4B1.1(b).

7

(career offender predicates) and the prodigious quantity of powder cocaine for which he was found responsible. The mandatory minimum sentence had nothing to do with it.

In short, while there have been changes in the law since the time that the Defendant was sentenced, they have no effect on his case. There is nothing "extraordinary and compelling" about a career offender whose offense of conviction produces a guideline range of 360-life having been incarcerated for approximately 19 years. Accordingly, the Court finds the Defendant's first argument to be without merit.

Next, the Defendant argues that he has a number of medical conditions—including, obesity, hypertension, cardiovascular disease, and high cholesterol—that place him at an increased risk of serious illness or death from COVID-19. [Doc. 207 at 13]. He further contends that the BOP is failing to control the spread of the virus or to protect the health and safety of its inmates within Butner. [Id. at 12-16].

While the Defendant expresses concern that he is particularly susceptible to severe illness or death if he were to contract COVID-19, the medical records submitted by the Government indicate that the Defendant actually contracted the coronavirus in February 2021, was asymptomatic,

8

and apparently recovered without any noted long-term effects. [Doc. 213-2 4; Doc. 213-3 at 2-6].

Further, despite the Defendant's argument to the contrary, the Court finds that the Federal Bureau of Prisons ("BOP") has taken significant measures to protect the health of its inmates. See United States v. Johnson, No. 1:19-cr-00020-MR-WCM, 2020 WL 7646809, at *2-3 (W.D.N.C. Dec. 23, 2020) (Reidinger, C.J.). In addition to these measures, BOP has begun the process of vaccinating inmates, which will offer inmates further protection from the virus. Taken together, these measures are designed to mitigate sharply the risks of COVID-19 transmission in BOP institutions while allowing BOP to continue to fulfill its mandate of incarcerating those persons sentenced or detained based on judicial orders.[3] Given BOP's efforts, the fact that the Defendant faces a potential risk of contracting the virus while incarcerated, without more, is not sufficient to justify the relief he requests. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a

---

[3] The effects of these mitigation efforts in evident in the fact that FCI Butner Medium II has had a total of 399 coronavirus cases among its inmate population and three deaths, but currently has only one positive case among its inmate population. See https://www.bop.gov/coronavirus/ (last visited July 22, 2021).

9

particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

The third reason cited by the Defendant for his compassionate release request is his rehabilitation while in prison. It is clear that the Defendant has made significant efforts to rehabilitate himself while incarcerated, including earning several degrees and working as a paralegal. While his efforts are certainly commendable, the law is clear that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" to justify compassionate release. 28 U.S.C. § 994(t). Thus, the Defendant's rehabilitation, without more, is insufficient to warrant the extraordinary relief sought.

Even if the Defendant could establish an extraordinary and compelling reason for his release, this Court still must consider the § 3553(a) factors, as "applicable," as part of its analysis of determining whether a sentence reduction is warranted. See § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020).

Here, the Defendant's crime was extremely serious. The Defendant pled guilty to participating in a conspiracy to distribute a significant amount

10

of cocaine. The Court found that the Defendant sold, purchased, and/or possessed between five and fifteen kilograms of cocaine throughout the course of the conspiracy. [Doc. 111: Judgment at 9]. During the course of their investigation, law enforcement officers discovered that the Defendant was cooking crack cocaine and trafficking MDMA and played a leadership role within the conspiracy. [Doc. 189: PSR at ¶ 9]. Additionally, the Defendant had a significant criminal history, including convictions for assault with a deadly weapon, carrying a concealed weapon, and possession of rock cocaine, which warranted the Court designating him as a career offender. [Id. at ¶¶ 29-33]. In light of the seriousness of the offense of conviction, and the Defendant's career offender status, analysis of the relevant § 3553(a) sentencing factors—including the need for the sentence to reflect the true extent and seriousness of the Defendant's offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the public from the Defendant's further crimes—leads the Court to conclude that the pronounced sentence of life imprisonment continues to be appropriate.

In sum, the Court finds that there are no "extraordinary and compelling reasons" for the Defendant's release and that analysis of the relevant §

3553(a) factors continue to weigh in favor of his continued incarceration. Accordingly, the Defendant's Motion for Compassionate Release is denied.

### B. Motion to Seal

The Government moves the Court for leave to file under permanent seal its Response and the accompanying exhibits. [Doc. 214]. For grounds, the Government states that two of the exhibits submitted are the Defendant's health chart and his BOP medical records, and that those records are referenced in the Government's Response. [Doc. 215]. The Government has submitted a redacted version of its filing [Doc. 213], in addition to the sealed version.

Before sealing a court document, the Court must "(1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives." Ashcraft v. Conoco, Inc., 218 F.3d 288, 302 (4th Cir. 2000). In the present case, the public has been provided with adequate notice and an opportunity to object to the Government's motion. The Government filed its motion on March 22, 2021, and such motion has been accessible to the public through

the Court's electronic case filing system since that time. Further, the Government has demonstrated that the subject medical records set forth in Doc. 215-2 and Doc. 215-3 contain sensitive information concerning the Defendant and that the public's right of access to such information is substantially outweighed by the Defendant's competing interest in protecting the details of such information. See United States v. Harris, 890 F.3d 480, 492 (4th Cir. 2018). Finally, having considered less drastic alternatives to sealing the documents, the Court concludes that sealing of these medical records is necessary to protect the Defendant's privacy interests. Accordingly, the Court will direct that Government's Exhibits 2 and 3 [Doc. 215-2, 215-3] shall remain under seal until further Order of this Court.

Other than briefly mentioning the medical conditions which the Defendant constitute extraordinary and compelling reasons for this release, the Government's Response does not discuss the Defendant's medical records in any great detail. Further, Government's Exhibit 1 contains public data regarding the Defendant's incarceration. Accordingly, the Court concludes that the Government's Response [Doc. 215] and Government's Exhibit 1 [Doc. 215-1] need not be filed under seal. These documents are already set forth in the public record as Doc. 213 and Doc. 213-1,

13

respectively. As such, the Court will direct the Clerk to remove Doc. 215 and Doc. 215-1 as duplicative.

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Compassionate Release [Doc. 207] is **DENIED**.

**IT IS FURTHER ORDERED** that the Government's Motion for Leave to File Response under Seal [Doc. 214] is **GRANTED IN PART** and **DENIED IN PART** as follows. The medical records submitted in support of the Government's Response [Docs. 215-2, 215-3] shall remain under seal until further Order of the Court. The Government's Response [Doc. 215] and Exhibit 1 to the Government's Response [Doc. 215-1] need not be sealed and are duplicative of the Government's previous filings [Docs. 213, 213-1]; accordingly, these documents [Docs. 215, 215-1] shall be removed from the record as duplicative.

**IT IS SO ORDERED.**

Signed: July 26, 2021

Martin Reidinger
Chief United States District Judge