THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 1:00-cr-00069-MR-5

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | O R D E R |
| ) | |
| AMOS JUNIOR SCOTT, ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court on the Defendant's Motion to Reconsider Denial for Compassionate Release. [Doc. 221].

**I.  BACKGROUND**

During 1999 and 2000, the Defendant Amos Junior Scott and his co-defendant George McBride, both of whom lived in California, delivered multiple-kilogram quantities of cocaine to Robert Rutherford in Asheville, North Carolina, receiving between $22,000 and $26,000 per kilogram. [Doc. 211 at ¶¶ 7-9]. Scott and McBride traveled to Asheville, carrying the cocaine in plastic bags wrapped in black tape and secured to the top of gas tanks in rental cars, often transporting between two and three kilograms of cocaine at a time. [Id. at ¶ 7]. At least 70 kilograms of cocaine were reasonably foreseeable to Scott. [Id. at ¶ 9].

A federal grand jury indicted Scott and charged him with conspiracy to possess with intent to distribute at least 5 kilograms of cocaine, 21 U.S.C. § 846. [Doc. 3: Indictment]. The Government filed an Information under 21 U.S.C. § 851, notifying Scott and this Court that it intended to seek an enhanced penalty because Scott had previously been convicted of a felony drug offense in California. [Doc. 7: § 851 Notice]. A jury convicted Scott of the conspiracy offense, finding that the offense involved at least 5 kilograms of cocaine. [Doc. 80: Jury Verdict].

This Court's probation office submitted a presentence report in preparation for sentencing. Based on Scott's prior convictions for assault with a deadly weapon or force likely produce harm and possession of rock cocaine for sale, the probation officer determined that Scott was a career offender. [Doc. 211: PSR at ¶ 24]. The adjusted offense level of 38 resulting from Scott's classification as a career offender was four levels higher than the adjusted offense level calculated from application of the drug-trafficking guideline and the Court's determination that Scott was responsible for at least 5 kilograms but less than 15 kilograms of cocaine. [Id. at ¶¶ 15-22; Doc. 111: Judgment at 7, 9]. The probation officer found that the Sentencing Guidelines called for a sentence of between 360 months and life in prison.

2

[Doc. 211: PSR at ¶ 52]. Scott faced a statutory mandatory minimum sentence of twenty years and a maximum of life. [Id. at ¶ 51]. In September 2001, this Court sentenced Scott to life in prison. [Doc. 111: Judgment at 2]. The Defendant is currently housed at FCI Butner Medium II with no projected release date due to his life sentence.[1]

In February 2021, the Defendant filed a motion, seeking compassionate release, arguing three grounds: (1) that he was erroneously classified as a career offender, and that if he were sentenced today, he would not have been sentenced as severely; (2) that he suffers from a number of chronic health conditions which increase his risk of serious illness or death from COVID-19; and (3) that he "has compiled a remarkable record of rehabilitation" in prison, thereby demonstrating that he would not be a danger to the public if released. [Doc. 207 at 1-2]. In July 2021, the Court denied the Defendant's motion. [Doc. 220]. The Defendant now seeks reconsideration of that Order. [Doc. 221].

## II. DISCUSSION

The Defendant first argues that in its Order denying compassionate release, the Court failed to address his argument that § 846 conspiracy

---

[1] See https://www.bop.gov/inmateloc/ (last accessed Oct. 17, 2021).

conviction is not a controlled substance offense under the Guidelines and therefore he is no longer properly classified as a career offender. [Doc. 221 at 1].

Even if Scott were correct that, if he were sentenced today for the offense of conspiracy to possess with intent to distribute cocaine, he would not be designated a career offender in light of United States v. Norman, 935 F.3d 232, 237-39 (4th Cir. 2019) (holding that the offense of conspiracy to possess with intent to distribute a controlled substance is not a "controlled substance offense" within in the meaning of the career offender guideline),[2]

---

[2] Section 4B1.2 of the Guidelines defines a controlled substance offense as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b). Application Note 1 of the commentary clarifies that "controlled substance offenses" "include the offenses of aiding and abetting, *conspiring*, and attempting to commit such offenses." U.S.S.G. § 4B1.2 cmt. n.1 (emphasis added). Notwithstanding the wording of this provision, the Court in Norman held that a drug conspiracy conviction under § 846 is not a "controlled substance offense." This interpretation of § 4B1.2 is interesting in light of the fact that this section expressly states that "the term 'controlled substance offense' means an offense under federal . . . law . . . that prohibits . . . the possession of a controlled substance . . . with the intent to . . . distribute . . ." and "include[s] the offense[ ] of . . . conspiring . . . to commit such offense[]" USSG § 4B1.2 and n.1. That defines only one crime: a violation of § 846. Yet the Court in Norman proceeded through a complex categorical analysis to hold that this category of one is actually a category of none. For this reason, other courts of appeal have held that the plain text of U.S.S.G. § 4B1.2, as further defined by Application Note 1, includes § 846 drug conspiracies. See United States v. Lewis, 963 F.3d 16, 24 (1st Cir. 2020), cert. denied, No. 20-7387, 2021 WL 2519339 (U.S. June 21, 2021); United States v. Tabb, 949 F.3d 81, 87 (2d Cir. 2020), cert. denied, No. 20-579, 2021 WL 2519097 (U.S. June

4

this fact alone would not automatically entitle Scott to a compassionate release. In McCoy, the Fourth Circuit held only that the district courts had discretion to consider "the severity of the defendants' ... sentences and the extent of the disparity between the defendants' sentences and those provided for under [current law]," when deciding a motion for compassionate release. United States v. McCoy, 981 F.3d 271, 286 (4th Cir. 2020). "Nothing in McCoy, however, requires the court to reduce a defendant's sentence once the defendant shows that new statutory or case law would have benefitted the defendant, if such law had existed at the time of the defendant's sentencing." United States v. Spencer, 521 F. Supp. 3d 606, 610 (E.D. Va.), aff'd, 853 F. App'x 833 (4th Cir. 2021). Rather, the Court must decide whether a reduction in sentence is warranted "based on a 'full consideration of the Defendant's individual circumstances.'" Id. (quoting McCoy, 981 F.3d at 286). Such circumstances include the length of time already served, any rehabilitative efforts made while incarcerated, the

---

21, 2021). As such, the Fourth Circuit's holding in Norman would appear to represent a departure from ordinary textualism. It is also a clear departure from the Circuit's own precedent. See Norman, 935 F.3d at 242-43 (King, J. concurring in part and dissenting in part) (noting that in United States v. Kennedy, 32 F.3d 876 (4th Cir. 1994), the Fourth Circuit held that § 846 is a controlled substance offense, a holding which the Norman majority referred to merely as an "assumption"). Nevertheless, Norman constitutes binding precedent, and the Court is obliged to follow it.

defendant's prior criminal history, and the defendant's age at the time of the offense.  McCoy, 981 F.3d at 286.

Here, considering the totality of the circumstances presented, along with the sentencing factors in 18 U.S.C. § 3553(a), the Court concludes that Scott has failed to show extraordinary and compelling reasons for a compassionate release.  Scott's offense conduct was serious, involving the distribution of multiple kilograms of cocaine within the relatively small communities of western North Carolina.  Even without the career offender enhancement, Scott's responsibility for between 5 and 15 kilograms of cocaine would still subject him to a statutory range of between ten years and life imprisonment.  At the time that he engaged in subject conspiracy, Scott was in his early 30s and had already accrued a significant criminal history, including convictions for assault with a deadly weapon or force likely to produce great bodily injury, false identification to a police officer, carrying a concealed weapon, and possession of rock cocaine. [Doc. 211: PSR at ¶¶ 29-31].  Additionally, while Scott's efforts at rehabilitation while incarcerated are commendable, such efforts are not so exceptional to warrant the extraordinary relief of compassionate release.

6

Case 1:00-cr-00069-MR    Document 229    Filed 10/26/21    Page 6 of 8

In light of the serious nature of Scott's offense and his criminal history, the Court finds that the relevant § 3553(a) sentencing factors, including the need for the sentence to reflect the true extent and seriousness of Scott's offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the public from further crimes, counsel against Scott's compassionate release. The Defendant's motion for reconsideration on this ground is denied.

Scott also moves for reconsideration of the Order denying his request for compassionate on the ground that "new scientific evidence contradicts the Court's Order concerning Mr. Scott's susceptibility to reinfection and the BOP's handling of the COVID-19 pandemic." [Doc. 221 at 1, 2-5]. Upon careful review of the Defendant's arguments, the Court finds no basis for reconsideration of its prior Order denying relief on this basis.

In sum, the Court finds that there are no "extraordinary and compelling reasons" for the Defendant's release and that analysis of the relevant § 3553(a) factors continue to weigh in favor of his continued incarceration. Accordingly, the Defendant's motion for reconsideration is denied.

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion to Reconsider Denial for Compassionate Release [Doc. 221] is **DENIED**.

**IT IS SO ORDERED.**

Signed: October 26, 2021

Martin Reidinger
Chief United States District Judge